UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA                       15 CR 201 (LTS)

-against-

JORGE LEYVA

--------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF
JORGE LEYVA'S PRETRIAL MOTIONS**


Deborah Colson
Kristen Santillo
Colson & Harris LLP
80 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 257-6455

**Table of Contents**

Table of Authorities ........................................................................................................................iii

Preliminary Statement......................................................................................................................1

Factual Background ..........................................................................................................................2

    1.   The arrest ............................................................................................................................2

    3.   The search of Mr. Leyva's Phone .....................................................................................3

Motion to Suppress All Evidence Seized In Connection With Mr. Leyva's Unlawful Arrest ......5

    1.   Legal framework ................................................................................................................5

    2.   Handcuffing Mr. Leyva constituted a de facto arrest........................................................7

    3.   Officers lacked probable cause to arrest Mr. Leyva ..........................................................8

    4.   The evidence seized in connection with Mr. Leyva's unlawful arrest must be suppressed.............9

Mr. Leyva's Statements Must Be Suppressed As a Violation of His Miranda Rights .................9

Motion to Suppress Evidence Seized from Mr. Leyva's Phone ...................................................11

    1.   Legal framework ..............................................................................................................11

    2.   The warrant was not supported by probable cause ..........................................................12

        A.   *The tenuous connection between Mr. Leyva's phone calls from "Black" and a confidential informant's prior drug purchases from "Black"*...........................12

        B.   *Mr. Leyva's desire for his associates to take his property was inconsequential* ......13

        C.   *Generalized statements that drug traffickers use cell phones are insufficient to establish probable cause*.............................................................14

        D.   *The application did not establish probable cause*.........................................................15

    3.   The warrant was overbroad and lacked particularity .....................................................16

Conclusion ....................................................................................................................................17

## Table of Authorities

**Cases**

*Colorado v. Connelly,* 479 U.S. 157 (1986) .......................................................................... 10

*Coolidge v. New Hampshire,* 403 U.S. 443 (1971).............................................................. 11, 17

*Florida v. Royer*, 460 U.S. 491 (1983) ...................................................................................... 6

*Gilles v. Repicky*, 511 F.3d 239 (D.Vt. 2007) .......................................................................... 6

*Illinois v. Wardlow,* 528 U.S. 119 (2000) .............................................................................. 7, 8

*Jenkins v. City of New York,* 478 F.3d 76 (2d Cir. 2007) .......................................................... 8

*Lego v. Twomey,* 404 U.S. 477 (1972) .................................................................................... 10

*Miranda v. Arizona,* 384 U.S. 436 (1966) ...................................................................... 1, 9, 10

*Oliveira v. Mayer*, 23 F.3d 642 (2d Cir. 1994) ........................................................................ 6

*Oregon v. Elstad*, 470 U.S. 298 (1985)..................................................................................... 9

*Parsad v. Greiner,* 337 F.3d 175 (2d Cir. 2003)...................................................................... 10

*Riley v. California,* 134 S.Ct. 2473 (2014) ............................................................................. 17

*Sibron v. New York,* 392 U.S. 40 (1968) ................................................................................... 5

*Terry v. Ohio,* 392 U.S. 1 (1968) ............................................................................................. 5

*United States v. Bailey,* 743 F.3d 322 (2d Cir. 2014) ....................................................... 5, 6, 8

*United States v. Cioffi,* 668 F. Supp. 2d 385 (EDNY 2009) ................................................... 12

*United States v. Falso,* 544 F.3d 110 (2d Cir. 2008) ..................................................... 11, 14, 15

*United States v. Fisher,* 702 F.2d 372 (2d Cir. 1983) ............................................................... 7

*United States v. Gaines*, 295 F.3d 293 (2d Cir. 2002) .............................................................. 9

*United States v. Hill,* 459 F.3d 966 (9th Cir. 2006) .......................................................... 11, 12

*United States v. Lebovits,* 11 Cr. 134, 2012 WL 10181099 (E.D.N.Y. Nov. 30, 2012) ............ 15

*United States v. Marin,* 669 F.2d 73 (2d Cir. 1982)................................................................. 7

*United States v. McDarrah,* 05 Cr. 1182, 2006 WL 1997638 (S.D.N.Y. July 17, 2006) ............ 15

*United States v. Morales,* 788 F.2d 883 (2d Cir. 1986) ............................................................ 9

*United States v. Navedo,* 694 F.3d 463 (3d Cir. 2012) ............................................................. 8

*United States v. Newton*, 369 F.3d 659 (2d Cir. 2004) ......................................................... 6, 8

*United States v. Riley,* 906 F.2d 841 (2d Cir. 1990) .............................................................. 17

*United States v. Shi Yan Liu,* 239 F.3d 138 (2d Cir. 2000) ..................................................... 11

*United States v. Tehrani*, 49 F.3d 54 (2d Cir.1995)................................................................ 6

*United States v. Vargas,* 369 F.3d 98 (2d Cir. 2004)........................................................ 6, 7, 8

*Wong Sun v. United States*, 371 U.S. 471 (1963) .................................................................... 9

*Ybarra v. Illinois*, 444 U.S. 85 (1979) ................................................................................... 14

**Statutes**

NY V&T Law 34 § 4-04................................................................................................................ 8

U.S. Const. amend. IV ............................................................................................................. 11

# I.

## Preliminary Statement

Jorge Leyva is accused of distributing and possessing with intent to distribute a detectable amount of crack cocaine and using and carrying a firearm during and in relation to a drug trafficking crime.  He submits this memorandum of law in support of his motion to suppress (1) statements and physical evidence obtained as a result of his unlawful arrest, (2) statements made in violation of *Miranda v. Arizona*, and (3) physical evidence obtained during an illegal search of his phone.

The grounds for the motion are as follows:

First, all physical evidence seized and statements made following Mr. Leyva's arrest must be suppressed because officers handcuffed him without a reasonable basis to believe he posed a physical threat to the officers or probable cause to believe he had committed a crime.

Second, Mr. Leyva's statements must also be suppressed because the government has failed to establish his knowing and voluntary waiver of *Miranda* rights or the voluntariness of his statements.

Third, the evidence seized from Mr. Leyva's cell phone must be suppressed because the agents lacked probable cause to obtain a warrant to search the phone, and, in executing the search, they seized personal material well beyond the warrant's scope.

## II.

## Factual Background

1.  <u>The arrest</u>

Mr. Leyva is charged with distribution and possession with intent to distribute 14 grams of crack cocaine and using and carrying a .25 caliber Phoenix Arms Model Raven semi-automatic handgun.  He was arrested on January 6, 2015, at 11:38 pm on University Avenue in the Bronx.

According to the Complaint, on the night of January 6, 2015, two detectives and a sergeant were on patrol in an area of the Bronx known for "high gang and drug activity."  Ex. A to Colson Affirmation ("Colson Aff.") ¶ 4(a).  The officers allegedly observed Mr. Leyva walking on University Avenue and frequently looking over his shoulder.  *Id*. at ¶ 4(b).  Later, he entered and exited a building then jaywalked toward their car.  *Id*. at ¶¶ 4(b)-(c).  At that point, one of the detectives got out of the car and identified himself as law enforcement.  *Id*. at ¶ 4(d).  Mr. Leyva then allegedly ran northbound on University Avenue, and the two detectives chased him on foot.  *Id*. at ¶ 4(d)-(e).  Once they caught him, they handcuffed him and then frisked him.  *Id*. at ¶ 4(e).  During the frisk, they recovered a plastic bag containing a white, rock-like substance from inside the front waistband of Mr. Leyva's pants and a small handgun, the size of dollar bill, in his right jacket pocket.  *Id*. at ¶¶ 4(f), 5.

2.  <u>The statements</u>

Mr. Leyva is alleged to have made two post-arrest statements.  As he was being searched, he allegedly stated he had marijuana.  *Id*. at ¶ 4(e).  Then, inside the precinct, he provided the following written statement:  "I got robbed at gunpoint[.]  20 min later this really nice cops stop me and found a weapon on me[.]  I have all the best things happ[en]ing to me for my caree[r]

and 1 mistake changed it all." Ex. B to Colson Aff. Mr. Leyva does not recall officers reading

him his *Miranda* rights prior to making these statements, and no Miranda waiver form was

provided on discovery. Affidavit of Jorge Leyva ("Leyva Aff."), Colson Aff. ¶ 13.

    3. <u>The search of Mr. Leyva's Phone</u>

    During a search incident to arrest, officers seized Mr. Leyva's cell phone. Subsequently,

the government obtained a warrant to search the contents of the phone. *See* Ex. C to Colson Aff.

The warrant was provided based on the application of Detective Shane Gugliucciello, setting

forth three facts in support of probable cause.

    First, Detective Gugliucciello alleged that, while Mr. Leyva was being processed, his cell

phone rang multiple times and an officer "observed [the cellphone] as it was ringing and saw that

the external screen displayed the name of a caller named 'Black.'" *Id*. at ¶ 5(g). Detective

Gugliucciello further stated that he had spoken to a paid confidential informant who claimed to

have purchased marijuana, heroin, and cocaine on multiple occasions between October and

November 2014 from an individual known as "Black" near 183rd Street and Davidson Avenue in

the Bronx. *Id*. at ¶ 6.

    Second, Detective Gugliucciello alleged that associates of Mr. Leyva, suspected of being

involved in narcotics trafficking, attempted to pick up his phone and other property from the

precinct on the night of his arrest and that Mr. Leyva indicated he wanted his friends to take the

property. *Id*. at ¶ 5(h).

    Third, Detective Gugliucciello alleged that, based on his training and experience,

individuals involved in narcotics trafficking use cell phones in connection with their drug

activity. *Id*. at ¶ 7. Specifically, Detective Gugliucciello stated:

> Based on my training and experience, I know that individuals involved in narcotics
> trafficking and distribution often use cellular telephones to arrange the deliveries of

narcotic substances and the subsequent narcotics transactions and that it is common for a person involved in narcotics trafficking to possess multiple cellular telephones in order to prevent detection or interception by law enforcement.  Such persons also commonly maintain contact information on their cellular telephones, including names, telephone numbers, direct connect numbers, and/or beeper numbers for their criminal associates in the memory of their cellular telephones.  *Id*. at ¶ 9.

He further stated:

I also know, based on my training and experience, that narcotics traffickers often maintain photographs and/or videos that identify other participants in their activities as well as firearms used in their illegal activities…. *Id.* at ¶ 14.

Exhibit A to the warrant authorized the government to search the phone and SIM or memory cards found inside for ten items, including:

(1) Log information of telephone numbers or email addresses of incoming and outgoing calls, messages and/or other communications;
(2) Other caller-identification information, including names, phone numbers and addresses;
(3) Address books or contact lists;
(4) Opened and unopened voicemail messages;
(5) Any and all SMS, data, text, and MMS messages, and any other messages, attachments to those messages, and associated information;
(6) All files containing text, photos, or videos;
(7) Calendar, note, password, dictionary, or other scheduling information;
(8) GPS entries, Internet Protocol connections and location entries, including cell tower and WiFi entries;
(9) Internet or browser entries or history; and
(10) Any system, data, or configuration information contained within the phone.

*Id.*   The final paragraph of Exhibit A limited the search to items "pertaining to narcotics trafficking and conspiracy to commit the same, in violation of Title 21, United States Code, Sections 841, and 846, and possession of a firearm in furtherance of a drug trafficking offense, in violation of Title 18, United States Code, Section 924(c)."  *Id.*   No further limitations on the search parameters, or guidance on conducting the search, were provided.

The government provided defense counsel with the results of the phone search on May

15, 2015.  Colson Aff. ¶ 17.  Agents appear to have extracted the entire contents of the phone, including:  327 contacts; a call log showing 344 entries, including incoming, outgoing and missed calls; 143 MMS messages; 1,628 SMS (text) messages; 1,126 chats; and 65 GPS locations indicating where photos were taken. More than 2,000 images and over 100 video files were also extracted, including videos and photographs of Mr. Leyva with his children and friends, images of clothing from the internet, still shots from social media sites, and videos and photographs of Mr. Leyva attending music events.  *Id*.  While the majority of the files range in date from September 2014 to the night of Mr. Leyva's arrest, some files date as far back as 2005. *Id*.

## III.

**Motion to Suppress All Evidence Seized In Connection With Mr. Leyva's Unlawful Arrest**

1.  Legal framework

Because even a brief detention "is a serious intrusion upon the sanctity of the person," *Terry v. Ohio,* 392 U.S. 1, 17 (1968), reasonable suspicion to believe a crime is being or has been committed is required to execute a *Terry* stop.  *United States v. Bailey,* 743 F.3d 322, 332 (2d Cir. 2014).  An accompanying patdown is permissible only where officers also have "a reasonable basis to think 'that the person stopped is armed and dangerous.'"  *Id*. (quoting *Arizona v. Johnson*, 555 U.S. 325, 326-27 (2009)).  *See also Sibron v. New York,* 392 U.S. 40, 64-65 (1968) (frisk violated Fourth Amendment because no reasonable suspicion to believe that person stopped was armed).  A reasonable basis requires more than a mere "hunch."  *Terry,* 392 U.S. at 27.  Officers must have "specific and articulable facts which, taken together with rational inferences from those facts, provide them with a particularized and objective basis for suspecting wrongdoing."  *Bailey,* 743 F.3d at 332 (internal quotation marks and citations omitted).

When conducting a *Terry* stop, officers must "employ 'the least intrusive means reasonably available' to affect their legitimate investigative purpose." *United States v. Newton*, 369 F.3d 659, 674 (2d Cir. 2004) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). A permissible investigative stop supported by reasonable suspicion "may become an unlawful arrest if the means of detention are 'more intrusive than necessary.'" *United States v. Tehrani*, 49 F.3d 54, 61 (2d Cir.1995) (citation omitted). *See also Gilles v. Repicky*, 511 F.3d 239, 245 (2d Cir. 2007) ("Police officers may not seek to verify or dispel their reasonable suspicions of a crime 'by means that approach the conditions of arrest.'") (quoting *Royer*, 460 U.S. at 499.)

The Second Circuit has identified the following factors for determining when an investigative stop becomes a *de facto* arrest:

> the amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used.

*United States v. Vargas*, 369 F.3d 98, 101 (2d Cir. 2004). No one factor is dispositive; nevertheless, the use of handcuffs is "generally recognized as the hallmark of a formal arrest." *Newton*, 369 F.3d at 676 (collecting cases, and noting that "a reasonable person finding himself placed in handcuffs by the police would ordinarily conclude that his detention would not necessarily be temporary or brief and that his movements were now totally under the control of the police – in other words, that he was restrained to a degree normally associated with formal arrest and, therefore, in custody"). In determining whether the use of handcuffs transforms an investigative stop into a *de facto* arrest, "[t]he relevant inquiry is whether police have a reasonable basis to think that the person detained poses a present physical threat and that handcuffing is the least intrusive means to protect against that threat." *Bailey*, 743 F.3d at 340.

6

*See also Oliveira v. Mayer*, 23 F.3d 642, 646 (2d Cir. 1994) ("whenever this Court and other circuits have found an intrusive detention to be only a *Terry* stop, the police have always had a reasonable basis to believe the suspect was armed or otherwise dangerous.")

"[P]robable cause is necessary when police restrain an individual in a manner that, though not technically an arrest, is nonetheless so intrusive as to be 'tantamount' to an arrest." *United States v. Marin*, 669 F.2d 73, 81 (2d Cir. 1982).  Probable cause "exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the believe that (1) an offense has been or is being committed (2) by the person to be arrested."  *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983).

  2.  Handcuffing Mr. Leyva constituted a de facto arrest

According to the Complaint, four things happened before officers placed Mr. Leyva in handcuffs: (1) officers spotted Mr. Leyva walking in a high-crime area and looking over his shoulder; (2) he entered and exited a building; (3) he jaywalked toward their car; and (4) he ran when one of the detectives identified himself.  Both the Complaint and the warrant application unambiguously state the officers placed Mr. Leyva in handcuffs as soon as they caught up with him.  They frisked him *after* they handcuffed him.

Because Mr. Leyva ran from the officers, a brief investigatory detention may have been permissible.  *Illinois v. Wardlow,* 528 U.S. 119, 125 (2000) (suspect's flight in a high-crime area may justify a *Terry* stop.)   What followed next, however, was not.  Handcuffing Mr. Leyva exceeded the scope of a reasonable *Terry* stop because the officers did not have reasonable suspicion to believe he posed a physical threat.  Mr. Leyva did nothing to signal that he was carrying a weapon or intended to harm the officers.  Nor did he reach for anything in his pockets

or struggle with the officers when they caught him.  *Cf. Vargas,* 369 U.S. at 102 (officers handcuffed defendant based on reliable information that he had a weapon, because he fled, and because he subsequently struggled with them).

Moreover, assuming *arguendo* Mr. Leyva had posed a threat, officers failed to use the least intrusive means necessary to protect themselves.  *Vargas*, 369 F.3d at 101; *Bailey*, 743 F.3d at 340.  The officers outnumbered Mr. Leyva three to one.  Two officers were standing within reach of him, and another was on the scene.  Together the officers could have restrained Mr. Leyva for questioning in any number of ways.  The officers' use of handcuffs under these circumstances exceeded the scope of a permissible stop and converted the stop into a *de facto* arrest.  *Bailey*, 743 F.3d at 340.  *See also Newton,* 369 F.3d at 676 (handcuffs are the sort of restraint any reasonable person would "normally associate [ ] with formal arrest.")

3.  <u>Officers lacked probable cause to arrest Mr. Leyva</u>

A *de facto* arrest must be supported by probable cause.  Prior to handcuffing and searching Mr. Leyva, officers had no reasonable or trustworthy information to believe he had committed a crime.  Jaywalking is a traffic violation, not a crime. Admin. Code of City of NY tit 34 § 4-04.   And flight alone—even in a high-crime area—never provides probable cause for arrest.  *Jenkins v. City of New York,* 478 F.3d 76, 89 n.12 (2d Cir. 2007) ("although a suspect's flight may, under certain circumstances, provide reasonable suspicion to warrant a *Terry* stop, it does not, without more, provide probable cause to arrest"); *United States v. Navedo,* 694 F.3d 463, 474 (3d Cir. 2012) ("unprovoked flight, without more, can not elevate reasonable suspicion to detain and investigate into the probable cause required for an arrest.")   Indeed, the Supreme Court has recognized that flight can be just as consistent with innocence as it is with guilt, particularly in minority and high crime areas.  *See Wardlow,* 528 U.S. at 132-33 ("Among some

citizens, particularly minorities and those residing in high crimes areas, there is…the possibility

that the fleeing person is entirely innocent, but, with or without justification, believes that contact

with the police can itself be dangerous, apart from any criminal activity associated with the

officer's sudden presence.  For such a person, unprovoked flight is neither 'aberrant' nor

'abnormal.'") (Stevens, J., concurring).

Because officers lacked probable cause to believe Mr. Leyva had committed a crime, his

arrest was unlawful.

4. <u>The evidence seized in connection with Mr. Leyva's unlawful arrest must be
suppressed</u>

Where an arrest is not supported by probable cause, the "fruits" of that arrest must be

suppressed.  *Wong Sun v. United States*, 371 U.S. 471, 484 (1963) (stating that defendant's

declarations must be excluded "if they are held to be 'fruits' of the agents' unlawful action.");

*United States v. Morales*, 788 F.2d 883, 885 (2d Cir. 1986) ("The Wong Sun doctrine is applied

whether the fruit of the Fourth Amendment violation is physical evidence or a confession.")

(citations omitted.)  Mr. Leyva was unlawfully arrested before the officers searched him and

seized the narcotics and the gun and before he made any statements.  Because the physical

evidence and statements were fruits of Mr. Leyva's illegal arrest, they must be suppressed.

## IV.

**Mr. Leyva's Statements Must Be Suppressed As a Violation of His Miranda Rights**

Custodial interrogation of a criminal suspect must be preceded by a knowing and

voluntary waiver of *Miranda* rights.  *Miranda v. Arizona,* 384 U.S. 436 (1966).  Where "a

defendant is not advised of his *Miranda* rights prior to making his custodial statement, an

irrebuttable presumption of compulsion arises and the state cannot show that the suspect waived

his rights voluntarily."  *United States v. Gaines*, 295 F.3d 293, 298 (2d Cir. 2002) (citing *Oregon*

*v. Elstad*, 470 U.S. 298, 307 (1985)).  In addition, "a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained."  *United States v. Rivera*, No. 08 CR 1327(HB), 2009 WL 3030302, at *5 (S.D.N.Y. Sept. 22, 2009) (citing *Miranda,* 384 U.S. at 475).  Rather, "the Government must point to some affirmative conduct of the defendant, *i.e.* words or actions, from which a knowing and intelligent waiver may be clearly inferred."  *Id.*  The burden is on the government to prove a valid waiver by a preponderance of the evidence.  *Id.*

The government also carries the burden of proving the voluntariness of a defendant's statements by a preponderance of the evidence.  *Colorado v. Connelly,* 479 U.S. 157, 168 (1986) (citing *Lego v. Twomey,* 404 U.S. 477 (1972)).  In evaluating voluntariness, a court must examine the totality of the circumstances surrounding the statements, including the conditions of the interrogation, the characteristics of the defendant, and the conduct of the police.  *See Parsad v. Greiner,* 337 F.3d 175, 183 (2d Cir. 2003).

Mr. Leyva made an oral statement to police while he was in handcuffs on the street and a written statement in custody at the police station.  He does not recall the officers advising him of his *Miranda* rights, *see* Leyva Aff., and there is no notation that *Miranda* warnings were provided in the discovery.  Colson Aff. ¶ 13.  The discovery also lacks evidence of a *Miranda* waiver.  Mr. Leyva's written statement does not include a waiver, nor was a separate waiver form produced.  *Id.* at Ex. B.

The government's failure to establish that Mr. Leyva received and waived his *Miranda* rights or to prove the voluntariness of Mr. Leyva's statements requires their suppression.

## IV.

### Motion to Suppress Evidence Seized from Mr. Leyva's Phone

The evidence seized from the search of Mr. Levya's phone should be suppressed because the warrant was not supported by probable cause, and it was overly broad and lacking in particularity.

1. <u>Legal framework</u>

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. The basic impetus for the Fourth Amendment's Warrant Clause was the elimination of general searches. *United States v. Shi Yan Liu,* 239 F.3d 138, 140 (2d Cir. 2000). *See also Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971) (Fourth Amendment's objective is to prevent the "general, exploratory rummaging in a person's belonging"). General searches have been described as "especially pernicious," and they "have long been deemed to violate fundamental rights." *Shi Yan Liu,* 239 F.3d at 140 (citation and quotation marks omitted).

To avoid general searches, courts have limited government applications for search warrants in three respects: (1) warrants must be based on probable cause; (2) they must be limited in scope; (3) and they must be particular. Probable cause is a "practical, common-sense" analysis that requires the issuing magistrate judge to determine "whether, given all the circumstances set forth in the affidavit before him, … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Falso,* 544 F.3d 110, 117 (2d Cir. 2008) (citation and quotation marks omitted). "Particularity is the requirement that the warrant must clearly state what is sought." *United States v. Hill,* 459 F.3d 966, 973 (9th Cir.

11

2006).  And "[b]readth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id.*  Thus, "a warrant can violate the [Fourth Amendment warrants clause] either by seeking specific material as to which no probable cause exists, or by giving so vague a description of the material sought as to impose no meaningful boundaries."  *United States v. Cioffi,* 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009) (citation and internal quotation marks omitted.)

The warrant here fails to meet any of the above requirements.

2.  <u>The warrant was not supported by probable cause</u>

None of the grounds proffered by Detective Gugliucciello in support of the warrant, whether taken separately or together, sufficed to establish probable cause to search Mr. Leyva's cellphone.

A.  *The tenuous connection between Mr. Leyva's phone calls from "Black" and a confidential informant's prior drug purchases from "Black"*

In the warrant application, Detective Gugliucciello made two references to a person named "Black."  First, he stated that, "[w]hile LEYVA was being processed at the police station, the TARGET CELLPHONE received multiple calls.  Detective-2 observed the TARGET CELLPHONE as it was ringing and saw that the external screen displayed the name of the caller as 'Black'"  *See* Ex. C to Colson Aff. ¶ 5(g).  Second, Detective Gugliucciello alleged that he spoke with a paid confidential informant who claimed to have purchased marijuana, heroin, and cocaine from someone known as "Black" between October and November 2014 near 183rd Street and Davidson Avenue in the Bronx.  *Id.* at ¶ 6.

As an initial matter, Detective Gugliucciello's description of the calls Mr. Leyva received was misleading.  Detective Gugliucciello suggested that Mr. Leyva received multiple calls from

"Black" while in police custody.  A review of the phone records, however, shows that Mr. Levya only received one call from "Black" following his arrest.  Colson Aff. at ¶ 18.

Detective Gugliucciello further failed to provide any reasonable basis for believing that the "Black" who called Mr. Leyva was the same "Black" who sold drugs to the confidential informant.  "Black" is a common nickname and a common surname.  In the 2000 census, Black was number 160 of the 1000 most popular surnames.  *See* http://www.census.gov/topics/population/genealogy/data/2000_surnames.html, File A. Detective Gugliucciello did not allege that the two "Blacks" had the same phone number or that the confidential informant provided any sort of factual link between them.  In addition, Mr. Leyva's arrest took place two months after the confidential informant purchased drugs from "Black" so there was no concurrence in time.  And the drugs at issue were different.  The confidential informant purchased marijuana, heroin and cocaine, while Mr. Leyva is accused of possessing crack cocaine.

Absent any additional information about the identity of the caller, the purpose of the call, or the relationship between the caller and Mr. Leyva, there was no "fair probability" that the "Black" calling Mr. Leyva was the same person who sold drugs to the confidential informant or, in turn, that evidence of drug activity would be found on Mr. Leyva's phone.

### B.  *Mr. Leyva's desire for his associates to take his property was inconsequential*

In further support of his application, Detective Gugliucciello noted that associates of Mr. Leyva's, who were "suspected" of narcotics trafficking, attempted to retrieve his cell phone and other property and that Mr. Leyva wanted them to take his things.  This was inconsequential. There is nothing inherently suspect about a defendant who is facing a potentially prolonged detention asking his friends to take custody of his property, whether or not that property includes

13

his cell phone.  Indeed, a defendant may have very good reasons for giving his friends access to his phone, including wanting their help to notify his family, friends or employers of his detention and to contact people who might assist with his bail application and defense.

Detective Gugliucciello's claim that Mr. Leyva's associates were suspected of narcotics trafficking did nothing to strengthen his grounds for probable cause.  Detective Gugliucciello offered no specific or articulable facts in support of his suspicions about Mr. Leyva's associates. Moreover, even if he had, Mr. Leyva's associates' potential criminal activity cannot support a finding of probable cause to search Mr. Leyva's phone.  The Supreme Court has explained that:

> Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

*Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).  Though *Ybarra* involved a warrant to search a bar rather than a phone, the Supreme Court's analysis is also applicable here.

### C.  *Generalized statements that drug traffickers use cell phones are insufficient to establish probable cause*

Detective Gugliucciello also made generalized assertions that narcotics traffickers typically use cell phones in connection with their drug activity.  Such generalized assertions are insufficient to establish probable cause.  And they can be contrasted to multiple cases where warrant affidavits provide a clear nexus between the evidence to be seized and the illegal activity.  *United States v. Falso,* 544 F.3d 100 (2d Cir. 2008), is instructive.  Falso was convicted of crimes related to child pornography and appealed the denial of a motion to suppress evidence seized from his home. The district court held that probable cause existed to search the home based on Falso's attempted access of a child pornography website.  *Falso,* 544 F.3d at 113.  The Second Circuit found, however, that absent any allegation that Falso had actually accessed the

14

website, "[g]eneralized allegations about: (1) the propensity of collectors of child pornography to intentionally maintain illegal images; (2) law enforcement's ability to retrieve such images from a computer; and (3) the ability to view child pornography on the cpfreedom.com website, fail to establish the requisite nexus of illegal activity to Falso." *Id.* at 124. *Cf. United States v. Lebovits,* No. 11 Cr. 134(SJ), 2012 WL 10181099, at *22 (E.D.N.Y. Nov. 30, 2012) (warrant to search email accounts supported by probable cause where affidavit provided evidence of fraud and "also demonstrated that each of the email accounts the government sought to search either received or sent emails pertinent to the fraudulent scheme under investigation."); *United States v. McDarrah,* No. 05 Cr. 1182(PAC), 2006 WL 1997638, at *9 (S.D.N.Y. July 17, 2006) (warrant to search email account supported by probable cause where application stated that defendant made sexually explicit comments to someone he believed was a 13 year old girl in text and instant messages, thus showing the email account was used for criminal activity.)  As in *Falso,* Detective Gugliucciello's generalized assertions that cell phones store data and narcotics traffickers use cell phones failed to provide the requisite nexus of illegal activity to Mr. Leyva. Thus, they were insufficient to establish probable cause that evidence of a crime would be found on Mr. Leyva's cell phone.

> D.  *The application did not establish probable cause*

In issuing a warrant, a court must consider "all the circumstances set forth in the affidavit." *Falso,* 544 F.3d at 117.  The grounds set forth in the application were so lacking individually that, even when aggregated, they did not establish a fair probability that evidence of a crime would be found on the phone.  Because the warrant was not supported by probable cause, the evidence seized from the phone must be suppressed.

3.   <u>The warrant was overbroad and lacked particularity</u>

Even if the Court finds that the warrant was lawfully obtained, the evidence seized from

Mr. Leyva's phone should still be suppressed because the warrant imposed no meaningful

boundaries on the material to be seized.

The warrant should have included a date limitation, restricting the items to be seized to

those created during the period leading up to and including Mr. Leyva's arrest.  There is no date

restriction on Exhibit A, and officers seized items from the phone that had no temporal proximity

to his arrest.  While the majority of the files ranged in date from September 2014 to the night of

Mr. Leyva's arrest, some files dated as far back as 2005.  *See* Colson Aff. ¶ 17.

Additionally, the warrant gave officers carte blanche to rummage through Mr. Leyva's

personal information without any limiting instructions.  Exhibit A authorized the seizure of

opened and unopened voicemail messages, "any and all" SMS or text messages and attachments,

"all" files containing text, photos and videos, "any" GPS entries, and "any" internet or browser

entries or histories. *See* Ex. A to Ex. C. to Colson Aff.  While it also instructed that the items

seized must pertain to narcotics trafficking and possession of a firearm, it failed to explain how

to target the relevant files.  Thus, in executing the warrant, the officers seized the full contents of

Mr. Leyva's phone, including items that bore no relationship to the crimes charged.  This

included:  327 contacts; a call log showing 344 entries, including incoming, outgoing and missed

calls; 143 MMS messages; 1,628 SMS (text) messages; 1,126 chats; and 65 GPS locations

indicating where photos were taken. More than 2,000 images and over 100 video files were also

extracted, including videos and photographs of Mr. Leyva with his children and his friends,

images of clothing from the internet, still shots from social media sites, and videos and

photographs of Mr. Leyva attending music events.

Warrants ought not "leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized." *United States v. Riley,* 906 F.2d 841, 844 (2d Cir. 1990).  This is particularly true when the item to be searched is a cell phone.  "Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person.  The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone.  They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Riley v. California,* 134 S.Ct. 2473, 2489 (2014).  *See id.* at 2490 ("Today…it is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate.")  Given "all they contain and all they may reveal," *id.* at 2494, when the government searches a computer device or a cell phone, the particularity requirement is essential.

Because the warrant authorized a "general, exploratory rummaging" through the contents of Mr. Leyva's phone, *Coolidge*, 403 U.S. at 467, it violated the particularity and breadth requirements, and the evidence extracted must be suppressed.

## V.

### Conclusion

For the above reasons, the Court should grant Mr. Leyva's pretrial motions in their entirety.

Dated:       New York, N.Y.
              June 2, 2015                      /s/

                                       _____

                                       Deborah Colson
                                       Kristen Santillo