UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                              :
UNITED STATES OF AMERICA,                     :
                                              :    <u>ECF</u>
           - v -                              :    15 Cr. 201 (LTS)
                                              :
JORGE LEYVA,                                  :
                    Defendant.                :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO DEFENDANT'S MOTION TO SUPRESS**


PREET BHARARA
United States Attorney for the
Southern District of New York


Eli J. Mark/Rebecca Mermelstein
Assistant United States Attorneys
 *Of Counsel*

Preliminary Statement ........................................................................................................... 1

Background ............................................................................................................................ 1

Argument .............................................................................................................................. 4

   I.    Leyva's Motion to Suppress Evidence Obtained in Connection with his Arrest Should be
Denied Without a Hearing ................................................................................................ 4

      A.   Applicable Law ......................................................................................................... 5

      B.   Discussion ................................................................................................................. 9

   II.   Leyva's Motion to Suppress His Statements to Law Enforcement Officers Should Be
Denied Without a Hearing .............................................................................................. 11

      A.   Applicable Law ....................................................................................................... 12

      B.   Discussion ............................................................................................................... 12

   III.    Leyva's Motion to Suppress Evidence Seized Pursuant to a Valid Search Warrant
Should Be Denied .......................................................................................................... 14

      A.   The Cellphone Was Not Fruit of an Unlawful Search or Seizure ................................. 14

      B.   The Search Warrant Was Supported by Probable Cause ................................. 14

      C.   The Search Warrant Was Not Overbroad and Did Not Lack Particularity ................... 18

Conclusion .......................................................................................................................... 21

## Preliminary Statement

The Government respectfully submits this Memorandum of Law in Opposition to defendant Jorge Leyva's ("Leyva") motion seeking suppression of, or a hearing concerning, (i) physical evidence recovered by detectives and a sergeant of the New York City Police Department ("NYPD") in connection with the defendant's arrest on January 6, 2015, for possession of narcotics and a firearm; (ii) statements the defendant made to the NYPD on the date of his arrest; and (iii) physical evidence obtained pursuant to a search warrant of the defendant's cellular telephone.

The defendant's motion is without merit and should be denied without a hearing. The undisputed facts set forth in the Complaint make clear that the detectives and sergeant (together, the "Officers") had reasonable suspicion to stop the defendant, to place him in handcuffs, and to search his person for weapons for their own safety and the safety of others. The defendant's two-sentence declaration in support of his motion fails to assert, let alone establish, that the statements he made to authorities were in response to NYPD questioning and/or that they were made without the benefit of <u>Miranda</u>. Lastly, there is no basis to suppress the evidence obtained on the cellphone pursuant to a valid search warrant. As such, Leyva's motion should be denied without a hearing.

## Background[1]

On January 6, 2015, the Officers, members of the Bronx Gangs Unit, were in an unmarked vehicle patrolling an area of the Bronx with high gang and drug activity. Compl. ¶ 4(a). The Officers observed Leyva walking down the street and frequently looking over his

---

[1] For purposes of responding to the defendants' motions, the Government principally relies on the facts as asserted in the January 29, 2015 Complaint, which was sworn to by NYPD Detective Shane Gugliuccello and signed by Magistrate Judge Sarah Netburn ("the Complaint"), unless otherwise noted. The Complaint is attached hereto as Exhibit A.

shoulder.  Compl. ¶ 4(b).   They saw Leyva enter and exit a building, and then jaywalk across the street directly towards their vehicle.  Compl. ¶ 4(b)-(c).[2]

One of the detectives stepped out of their vehicle and identified himself as a law enforcement officer; in response, Leyva immediately ran away.  Compl. ¶ 4(d).  The Officers chased Leyva on foot.  Compl. ¶ 4(e).  The Officers caught Leyva, placed him in handcuffs, and conducted a protective frisk for weapons.  Compl.¶ 4(e).  While he was being frisked, and prior to being asked any questions, Leyva stated that he only had marijuana on him.  Compl. ¶ 4(e). Notwithstanding Leyva's claim, during the safety frisk, the Officers found a Phoenix Arms .25 caliber semi-automatic handgun in Leyva's right jacket pocket and a plastic bag containing a white rock-like substance in the inside of the front waist-band of his pants.[3]  Compl. ¶¶  4(e)-(f), 5.  The Officers also recovered Leyva's cellphone (the "Cellphone").  Leyva was then arrested and transported to the police station.  Compl. ¶ 4(f).   At the police station, Leyva was orally advised of his <u>Miranda</u> rights and agreed to waive his rights and speak to law enforcement. Declaration of NYPD Detective Louis Martinez at ¶ 3.[4]  Leyva then made a written statement admitting to possessing the firearm.  Compl. ¶ 4(g).

---

[2]  Notable, this was approximately two weeks after two NYPD officers were shot and killed by an individual who ambushed them in their parked patrol vehicle.  <u>See</u> 2 N.Y.P.D. Officers Killed in Brooklyn Ambush; Suspect Commits Suicide, N.Y. TIMES (Dec. 20, 2014) available at *http://www.nytimes.com/2014/12/21/nyregion/two-police-officers-shot-in-their-patrol-car-in-brooklyn.html?_r=0*

[3] A substance analysis report prepared by the NYPD laboratory confirmed that the rock-like contents of the bag contained 15 grams of a substance that tested positive for the presence of cocaine. (The Complaint inaccurately stated that the report was able to determine that the substance was specifically crack cocaine, rather than just cocaine; as a result, in order to confirm the precise narcotic at issue, the NYPD is conducting further weight and purity testing on the substance to confirm that the substance is crack cocaine.)

[4] A forthcoming signed declaration by Detective Louis Martinez will be filed separately by the Government.

On January 29, 2015, Leyva was charged by Complaint with distributing and possessing with the intent to distribute narcotics, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) and with possessing a firearm in furtherance of that drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).  That same day, Magistrate Judge Sarah Netburn also signed a search warrant authorizing the search of the Cellphone.  The affidavit in support of the search warrant (the "Affidavit"), attached as Exhibit B to this opposition, detailed at length why there was probable cause to believe the Cellphone would contain evidence of the commission of narcotics offenses, in violation of Title 21, United States Code, Section 841 and 846, and firearms offenses, in violation of Title 18, United States Code, Section 924(c).  The Affidavit set forth the circumstances of the defendant's arrest.  In addition to the evidence that the defendant sold drugs and maintained a firearm for his protection, the Affidavit also set forth additional evidence that the Cellphone was being used for illicit purposes.  The Affidavit explained that after Leyva's arrest, certain of his associates, also suspected to be involved in narcotics trafficking, came to the precinct to retrieve the Cellphone and Leyva stated that he wanted the Cellphone returned to them.  Aff.  ¶ 5(h).  The Affidavit also explained that after Leyva's arrest, the Cellphone received calls from an individual saved in the phone's contacts as "Black," and that "Black" is the name of a known drug dealer operating in the area of the defendant's arrest.  Aff. ¶¶ 5(g); 6.  Finally, the Affidavit also explained, based on the affiant's training and experience, that drug dealers commonly use cellphones to facilitate their drug dealing.  Aff. ¶ 9.

Because the Cellphone was locked via passcode protection, on February 13, 2015, the Government obtained an order, signed by Magistrate Judge Michael H. Dolinger, for Apple Inc.'s technical assistance in executing the warrant, to include "extracting data from the [phone],

3

copying the data from the [phone] onto an external hard drive or other storage medium, and returning the aforementioned storage medium to law enforcement such that law enforcement may then perform a search of the device data on the supplied storage medium."[5]  After receiving the data from Apple, on May 15, 2015, the Government provided a copy of the data from the the Cellphone to defense counsel.

On March 31, 2015, a grand jury in this District returned a two-count Indictment against the defendant.  Count One of the Indictment charged the defendant with distributing and possessing with the intent to distribute mixtures and substances containing a detectable amount of crack cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C).  Count Two charged the defendant with possessing a firearm in furtherance of the drug trafficking offense charged in Count One in violation of 18 U.S.C. § 924(c).

<u>**Argument**</u>

I.     **Leyva's Motion to Suppress Evidence Obtained in Connection with his Arrest Should be Denied Without a Hearing**

Leyva moves to suppress the firearm, narcotics, and the Cellphone seized from him on January 6, 2015.  The defendant does not dispute any of the facts in the Complaint, but instead argues that (i) while the Officers had reasonable suspicion to stop him, they lacked reasonable suspicion to search him; and (ii) that the Officers' act of handcuffing him in connection with the protective frisk constituted a de facto arrest for which the Officers lacked probable case.  Because the unchallenged facts constituted reasonable suspicion to stop the defendant and conduct a protective frisk—including by handcuffing the defendant, who had just fled from law enforcement – the defendant's motion should be denied without a hearing.

---

[5] The Order is attached as Exhibit C to this opposition.

4

A.   <u>Applicable Law</u>

It is well-settled that a police officer may conduct a brief "investigative detention" or "<u>Terry</u> stop" by stopping a person to investigate possible criminal behavior, so long as at the time the officer effects the stop, the officer has "'reasonable suspicion' to believe that criminal activity has occurred or is about to occur." <u>United States</u> v. <u>Tehrani</u>, 49 F.3d 54, 58 (2d Cir. 1995); <u>Terry</u> v. <u>Ohio</u>, 392 U.S. 1 (1968).  Reasonable suspicion arises when law enforcement officers are "aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion." <u>United States</u> v. <u>Brignoni-Ponce</u>, 422 U.S. 873, 884 (1975).  Reasonable suspicion is an objective test and a court must consider the "totality of the circumstances." <u>United States</u> v. <u>Cortez</u>, 449 U.S. 411, 417 (1981).  The Second Circuit has described that the test for reasonable suspicion is "rather lenient," <u>United States</u> v. <u>Santana</u>, 485 F.2d 365, 368 (2d Cir. 1973), and "not a difficult one to satisfy," <u>United States</u> v. <u>Oates</u>, 560 F.2d 45, 63 (2d Cir. 1977).  Indeed, the standard "falls considerably short of satisfying a preponderance of the evidence standard" of the likelihood of criminal activity.  <u>United States</u> v. <u>Arvizu</u>, 534 U.S. 266, 274 (2002).

Reasonable suspicion may be based on a variety of factors, including an individual's presence in a high-crime neighborhood, "nervous, evasive behavior," and unprovoked flight upon noticing the police." <u>Illinois</u> v. <u>Wardlaw</u>, 528 U.S. 119, 124 (2000) (holding that officers had reasonable suspicion where defendant was present in high-crime neighborhood and fled from the police); <u>see</u> <u>id.</u> at 125 ("Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.").  In

short, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." Id.

After stopping a suspect pursuant to reasonable suspicion, an officer is permitted to conduct a protective search for weapons if the officer has "reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry, 392 U.S. at 27. The "officer need not be absolutely certain that the individual is armed"; but rather, may conduct the protective search if a reasonably prudent man in the officer's position "would be warranted in the belief that his safety or that of others was in danger." Id.; see also United States v. Alexander, 907 F.2d 269, 272 (2d Cir. 1990) ("A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists.").

When actions by the police exceed the bounds permitted by reasonable suspicion, the seizure becomes a de facto arrest and must be supported by probable cause. The Second Circuit has held that a Terry stop may ripen into an arrest if "the officers unreasonably used means of detention that were more intrusive than necessary." United States v. Perea, 986 F.2d 633, 644 (2d Cir. 1993). "A Fourth Amendment reasonableness inquiry asks 'would the facts available to the officer at the moment of seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?' " United States v. Newton, 369 F.3d 659, 673-74 (2d Cir. 2004) (quoting Terry, 392 U.S. at 21). Among the factors the Second Circuit has deemed relevant in assessing whether an investigative detention has become a de facto arrest and thus must be supported by probable cause are:

> (1) the length of time involved in the stop; (2) its public or private setting; (3) the number of participating law enforcement officers; (4) the risk of danger presented

by the person stopped; and (5) the display or use of physical force against the person stopped, including firearms, handcuffs, and leg irons.

Newton, 369 F.3d at 674; see also United States v. Vargas, 369 F.3d 98, 101 (2d Cir. 2004) (factors to be considered include amount of police force, need for force, degree to which suspect was restrained, duration of stop, and whether suspect was believed to be armed). No one factor is determinative. Newton, 369 F.3d at 674. Courts must also consider that often the police are acting in "a swiftly developing situation," United States v. Sharpe, 470 U.S. 675, 686 (1985), and "should not indulge in unrealistic second-guessing as to the means law enforcement officers . . . employ to conduct their investigations." United States v. Glover, 957 F.2d 1004, 1010-11 (2d Cir. 1992) (quotations omitted). In part for that reason, there are no "hard and fast rules for evaluating the conduct of law enforcement agents conducting investigative stops." Alexander, 907 F.2d at 272. As a result, "where an officer has a reasonable basis to think that the person stopped poses a present physical threat to the officer or others, the Fourth Amendment permits the officer to take necessary measures to neutralize the threat without converting a reasonable stop into a de facto arrest." Newton, 369 F.3d at 674 (quotation omitted).

As the Newton court observed, courts routinely have held that officers may use some degree of force, from a pat-down search, to the drawing of firearms, to the use of handcuffs, to prevent flight during a Terry stop or to protect the safety of the officers and others around. Id. (collecting cases). Thus, in Newton, the Second Circuit held that the placing of an individual in handcuffs during a brief search of his home did not equate to a de facto arrest under the Fourth Amendment. Id. at 675; see also United States v. Elston, 479 F.3d 314, 320 (4th Cir. 2007) ("drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest"); United States v. Martinez, 462 F.3d 903, 907 (8th Cir. 2006) ("use of

handcuffs can be a reasonable precaution during a <u>Terry</u> stop to protect [officers'] safety and maintain the status quo"); <u>United States</u> v. <u>Vargas</u>, 369 F.3d 98, 102 (2d Cir. 2004) (placing suspect on ground and into handcuffs did not convert <u>Terry</u> stop into arrest where suspect fled when originally approached); <u>United States</u> v. <u>Hamlin</u>, 319 F.3d 666, 671-72 (4th Cir. 2003) (<u>Terry</u> stop not necessarily extended into custodial arrest when defendant is handcuffed or does not feel free to leave); <u>United States</u> v. <u>Maher</u>, 145 F.3d 907, 909 (7th Cir. 1998) (reasonable to tackle and handcuff suspect because suspect was nervous, clutched his front pants pocket, and ran when officer asked for consent to search); <u>United States</u> v. <u>Wilson</u>, 2 F.3d 226, 231-32 (7th Cir. 1993) (use of handcuffs to prevent further flight during <u>Terry</u> stop did not constitute arrest); <u>United States</u> v. <u>Sanders</u>, 994 F.2d 200, 206 (5th Cir. 1993) ("using some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the ground, and handcuffing a suspect—whether singly or in combination—do not automatically convert an investigatory detention into an arrest requiring probable cause"); <u>United States</u> v. <u>Esieke</u>, 940 F.2d 29, 36 (2d Cir. 1991) (holding that use of handcuffs and leg irons to restrain suspected alimentary canal smuggler did not convert his border detention into an arrest); <u>United States</u> v. <u>Laing</u>, 889 F.2d 281, 285 (D.C. Cir. 1989) ("The amount of force used to carry out the stop and search must be reasonable, but may include using handcuffs or forcing the detainee to lie down to prevent flight.").

    A defendant is entitled to an evidentiary hearing on a motion to suppress only if the defendant establishes a contested issue of material fact. <u>See, e.g.</u>, <u>United States</u> v. <u>Pena</u>, 961 F.2d 333, 339 (2d Cir. 1992).   The showing must be made by an affidavit of someone with personal knowledge of the underlying facts.  <u>See</u> <u>United States</u> v. <u>Gillette</u>, 383 F.2d 843, 848 (2d Cir. 1967); <u>United States</u> v. <u>Noble</u>, 07 Cr. 284 (RJS), 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11,

2008) (stating that, in order to warrant a hearing on a motion to suppress, "the defendant must submit an affidavit by someone with personal knowledge that disputed facts exist").  The moving papers must be "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question."  Pena, 961 F.2d at 339 (quotation omitted); see also United States v. Dewar, 489 F. Supp. 2d 351, 359 (S.D.N.Y. 2007) ("when the allegations contained in such an affidavit are general and conclusory, an evidentiary hearing is unnecessary").  Here, as discussed below, the defendant has not submitted an affidavit that establishes a contested issue of material fact.

B.    Discussion

The defendant argues that the firearm and other evidence recovered from his person on January 6, 2015, as well as the statements he made during the stop and following his arrest, must be suppressed because the Officers did not have probable cause to arrest him. Leyva, however, does not contest any of the facts alleged in the Complaint, including: that he was in an area of high gang and drug activity; that as he walked down the street he glanced frequently over his shoulder; that he jaywalked across the street directly toward the Officers' unmarked vehicle; and that he ran from the Officers as soon as one of the officers identified himself as law enforcement.  Leyva does not dispute that the Officers had reasonable suspicion justifying a Terry stop—indeed, he does not dispute that he jaywalked across, the street—a violation of New York law.  Instead, he asserts that having properly stopped him, the Officers lacked reasonable suspicion justifying a protective frisk.  In the alternative, Leyva argues that even if the Officers' possessed reasonable suspicious justifying the search, that their use of handcuffs converted the stop into a de facto arrest for which they lacked probable cause.

Based on the undisputed circumstances, the Officers' actions in handcuffing and frisking the defendant were reasonable to preserve the status quo, to prevent further flight, and to protect their safety.  Leyva was observed walking down the street in a suspicious manner— frequently looking over his shoulder.  He entered a building, remained only a short time, and then returned to the street.  Leyva jaywalked across the street directly towards the Officers' unmarked vehicle and then immediately ran from the police after one of the Officers identified himself as law enforcement.  The Officers had reasonable suspicion to believe that the defendant was engaged in illegal conduct and to fear for their safety and the safety of others.  It was initially reasonable for the Officers to perceive the defendant's suspicious activities on the street, followed by him jaywalking directly toward their vehicle as a threat—especially after the recent ambush murder of two NYPD officers in their police vehicle.  The defendant's subsequent unprovoked flight, coupled with the defendant's other conduct, gave the Officers reason to believe that the defendant was engaged in illegal conduct and might be armed. Taken together, these circumstances indisputably gave the Officers reasonable suspicion to stop and search the defendant.  See, e.g., United States v. Dykes, 406 F.3d 717, 720 (D.C. Cir. 2005) (no custodial arrest where officers tackled and handcuffed suspect because he was fleeing and it was reasonable to think he had a weapon); United States v. Maher, 145 F.3d 907, 909 (7th Cir. 1998) (reasonable and not a custodial arrest for officer to tackle and handcuff suspect because suspect was nervous, clutched his front pants pocket, and ran when officer asked for consent to search).

Furthermore, it was reasonable for the Officers to detain the defendant by placing him in handcuffs in order to prevent further flight and to conduct a protective search to determine whether Leyva was in possession of a weapon.  Leyva had just violated the law and had fled from the Officers, and the Officers acted diligently in detaining him briefly until they determined

10

that he was in fact in possession of a concealed weapon.  Leyva was not placed under arrest until

after the Officers had recovered the handgun he now seeks to suppress, at which point they had

probable cause to make an arrest.  The conduct of the Officers prior to discovering the weapon

was reasonable under the circumstances, and did not constitute a de facto arrest such that a

probable cause standard applies.[6]

## II.     Leyva's Motion to Suppress His Statements to Law Enforcement Officers Should Be Denied Without a Hearing

Leyva also moves to suppress his statements on the alternative ground that they

were obtained in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1996).  As

described above, after being stopped, the defendant announced—without being questioned—that

he only had marijuana on him.  After being provided with Miranda warnings at the precinct, the

defendant made further written incriminating statements.  The defendant does not claim that his

statements on the street were obtained in response to police interrogation nor does he directly

challenge the (forthcoming) declaration of Detective Louis Martinez of the New York City

Police Department affirming that the defendant received Miranda warnings prior to making his

written statement.  Instead, the defendant has submitted an affidavit claiming only that "I do not

remember officers reading me my Miranda rights at any time."  The defendant's purported lack

of recollection simply does not establish a factual dispute warranting a hearing, let alone warrant

suppression.

---

[6] Moreover, even if the Court found the Officers lacked a basis to handcuff the defendant was unnecessary—which it was not—suppression would not be the appropriate remedy because the evidence would, in any case, have been inevitably discovered when the Officers conducted the protective frisk of the defendant.  See United States v. Stokes, 733 F.3d 438, 444 (2d Cir. 2013) (the inevitable discovery doctrine—provides that the fruits of an illegal search or seizure are nevertheless admissible at trial "if the government can prove that the evidence would have been obtained inevitably without the constitutional violation.").

A.    Applicable Law

Miranda warnings are required prior to police interrogation "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444. Statements made by a defendant after the administration of Miranda warnings are admissible, if the defendant knowingly and voluntarily waives his rights. See United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995). "To prove a valid waiver [of Miranda warnings], the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." Id. When "the totality of the circumstances reveals both an uncoerced choice and the requisite level of comprehension," then a court may "properly conclude that the Miranda rights have been waived." United States v. Male Juvenile, 121 F.3d 34, 41 (2d Cir. 1997) (quotation and citation omitted).

The protections of Miranda do not apply to voluntary statements made by a defendant to law enforcement that are not the product of interrogation. Rhode Island v. Innis, 446 U.S. 291, 301 (1980); United States v. Guido, 704 F.2d 675, 676-77 (2d Cir. 1983) ("Volunteered statements of any kind are not barred by the Fifth Amendment.) (quotation omitted). "Interrogation," for purposes of Miranda, refers to "express questioning or its functional equivalent" of a person in custody, that is, "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301.

B.    Discussion

The defendant conflates his two statements to law enforcement.  With regard to his first statement—a spontaneous utterance concerning his possession solely of marijuana—the

12

defendant simply ignores the fact that no Miranda warnings were necessary because the defendant's statement was not a response to any law enforcement questioning.   The defendant does not dispute that his statement was spontaneous, nor does he claim that it was made in response to any police questioning.   Instead, he bases his claim for suppression of this initial statement solely on the fact that he had not yet received Miranda warnings at the time the statement was made.   No Miranda warnings were necessary, however, because the defendant's statement was voluntary and not in response to any questioning.   Accordingly, this statement is clearly admissible.

With regard to his second, written statement at the police station, Leyva states only that he "do[es] not remember officers reading me my Miranda rights at any time."   Leyva Decl.   This second statement was made in response to police questioning and thus Miranda warnings were required.   This statement is also admissible, however, because there is no serious dispute that it was made after the defendant had been advised of his Miranda rights and had agreed to speak to police.   Martinez Decl. at ¶ 3.   Importantly, the defendant does not definitively state that he was not advised of his Miranda rights at the police station. The defendant claims instead only that he does not remember whether he received Miranda warnings.   Leyva Decl. But these assertions alone do not justify a hearing, let alone suppression. See United States v. Kuznetsov, 442 F. Supp. 2d 102, 111 (S.D.N.Y. 2006) (defendant's statement in declaration that he had no recollection of being read Miranda rights found not to raise factual issue requiring evidentiary hearing); United States v. Arthur, No. 01 Cr. 276 (VM), 2002 WL 523254, at *4-5 (S.D.N.Y. Apr. 5, 2002) (same).[7]

---

[7] But see United States v. Mason, No. SI 06 Cr. 80 (NRB), 2007 WL 541653 (S.D.N.Y. Feb. 16, 2007) (finding issue of fact for suppression hearing where defendant's sworn declaration stated he did not recall being advised of or waiving his Miranda rights); United States v. Cortez, No. 95 Cr. 275 (RPP), 1995 WL 422029 (S.D.N.Y. July 18, 1995) (same).

**III.     Leyva's Motion to Suppress Evidence Seized Pursuant to a Valid Search Warrant Should Be Denied**

The defendant argues that the evidence recovered from his Cellphone should be suppressed for three reasons: (1) the Cellphone was the fruit of an unlawful search of his person; (2) the search warrant for the Cellphone lacked probable cause; and (3) the search warrant was overbroad and lacked particularity.  Each of these arguments lacks merit.

A.     The Cellphone Was Not Fruit of an Unlawful Search or Seizure

As explained above, there was probable cause to arrest the defendant and there is no basis to suppress the evidence recovered incident to the defendant's arrest, including the Cellphone.  See Riley v. California, 134 S. Ct. 2473, 2486 (2014) (recognizing that warrantless seizure of cell phones incident to arrest, to prevent destruction of evidence, was proper); Illinois v. McArthur, 531 U.S. 326, 331-33 (2001) (holding that temporary warrantless seizure was proper to prevent destruction of evidence while officers sought to obtain warrant).

B.     The Search Warrant Was Supported by Probable Cause

**1.     Applicable Law**

Probable cause for a search warrant exists if "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see also United States v. Travisano, 724 F.2d 341, 346 (2d Cir. 1983) (stating that the evidence supporting probable cause need not be overwhelming: "it is only a probability, and not a prima facie showing of criminal activity, that is the standard for probable cause."); United States v. Falso, 544 F.3d 110, 117 (2d Cir. 2008) (same).  The task of a judge in issuing a warrant is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair

14

probability that contraband or evidence of a crime will be found in a particular place." Illinois v.

Gates, 462 U.S. at 238.   The evidence "must be seen and weighed … as understood by those

versed in the field of law enforcement." Gates, 462 U.S. at 231-32 (quoting United States v.

Cortez, 449 U.S. 411, 418 (1981)).  The judge deciding whether or not to issue a warrant should

take into account the "totality-of-the-circumstances" and his consideration should include an

"assessment of probabilities in particular factual contexts." Id. at 232-33.

       A judge's determination that probable cause existed to support the issuance of a

search warrant "should be paid great deference by reviewing courts." Gates, 462 U.S. at 236

(quotation omitted); see also Travisano, 724 F.2d at 345.  A search warrant issued by a

magistrate judge "will be upheld by a reviewing court on less persuasive evidence than would

have justified a police officer acting on his own" and that determination "is itself a substantial

factor tending to uphold the validity of the warrant." Travisano,724 F.2d at 345. Where an

issuing judge has determined that the probable cause standard was met and has duly issued a

warrant, the role of a reviewing court is circumscribed to ensuring that the issuing magistrate

judge had a "substantial basis" for concluding that probable cause existed.  Gates, 462 U.S. at

236; see also Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007). Any doubt should be resolved in

favor of upholding the warrant.  See United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998).

       In any event, even if the Court finds probable cause lacking, the evidence should

not be suppressed under the good faith exception to the exclusionary rule.  As the Second Circuit

has recognized, "most searches conducted pursuant to a warrant [] likely fall within [the good

faith exception's] protection . . . because a warrant issued by a magistrate judge normally

suffices to establish that a law enforcement officer has acted in good faith in conducting the

search."  United States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011) (quotation marks and citations

omitted).  The good faith exception does not apply only in limited circumstances:

> (1) where the issuing magistrate has been knowingly misled; (2) where the
> issuing magistrate wholly abandoned his or her judicial role; (3) where the
> application is so lacking in probable cause as to render reliance upon it
> unreasonable; and (4) where the warrant is so facially deficient that reliance upon
> it is unreasonable.

Id. (quoting United States v. Moore, 958 F.2d 216, 222 (2d Cir. 1992)).

### 2.      Discussion

Here Judge Netburn clearly had a "substantial basis" to conclude that there was

probable cause to search the Cellphone, based on the facts contained in the Affidavit.  The

Affidavit set out the circumstances of the defendant's arrest in detail, including the gun and

narcotics that were found on his person.  The Affidavit also set out (i) while Leyva was in

custody in the precinct, the Cellphone received calls from an individual with the same name

("Black") as a known narcotics distributor in the vicinity where the defendant was arrested; and

(ii) the defendant appeared eager to have his associates take possession of the Cellphone

immediately after he was arrested.[8]   The Affidavit also relied on the NYPD Detective's training

and experience that, among other things, cellphones are often used to arrange the deliveries of

narcotics substances and the subsequent narcotics transactions.

Although the defendant contends there was no nexus between the Cellphone and

Leyva's crime, the defendant ignores that the Cellphone was not recovered in isolation.  It was

recovered along with the firearm and a distribution-level quantity of narcotics in a plastic bag—

---

[8] Leyva asserts that the NYPD Detective's statement that the Cellphone received multiple calls
from "Black" was misleading because the call log of the Cellphone showed only one call
received from "Black."  Leyva has not made a showing that this statement, even if inaccurate,
was knowingly and intentionally inaccurate, or with a reckless disregard for the truth.  Leyva
does not assert that he is entitled to a Franks hearing nor could he.

evidence strongly suggesting narcotics trafficking.  See United States v. Gaskin, 364 F.3d 438, 457 (2d Cir. 2004) (recognizing that "guns are tools of the narcotics trade, frequently carried by dealers, particularly when they engage in transactions involving drugs or money"); United States v. Reyes, 353 F.3d 148, 154 (2d Cir. 2003) (recognizing that guns are "tools of the drug trade"). These circumstances, coupled with the Detective's experience that individuals in the narcotics business rely on cell phones, are more than sufficient to establish probable cause.  See United States v. Romain, No. 13 Cr. 724 (RWS), 2014 WL 6765831, at *4 (S.D.N.Y. Dec. 1, 2014) (finding that warrant for search of cell phones seized incident to the defendant's arrest for a drug trafficking conspiracy was supported by probable cause, even though warrant did not tie particular cell phone number to the offense); United States v. Barret, 824 F. Supp. 2d 419, 448-49 (E.D.N.Y. 2011) (finding probable cause to search drug dealer's cell phone where warrant relied on recitation of events leading to defendant's arrest and agent's training and experience). While the seizure of the Cellphone with drugs and a gun would be sufficient in itself to justify a search of the Cellphone, the Affidavit here contained even more evidence supporting a probable cause determination.  The defendant's associates desire to immediately recover his phone from the police station and the call(s) from "Black" further support a conclusion that there was probable cause to believe that the defendant was a drug dealer and that he used the Cellphone to communicate about drugs, including communicating with his supplier.

Furthermore, although the Government submits that the allegations in the Affidavit are more than sufficient to establish probable cause, even if probable cause is found lacking, the allegations are not so "bare bones" such that a reasonable officer would have known that the warrant lacked probable cause.  See United States v. Clark, 638 F.3d 89, 103 (2d Cir. 2011).  The defendant's assertion that the Affidavit was misleading because the Affidavit stated

that the phone received multiple calls from "Black" after the defendant was arrested, while the call log on the phone only lists one call, is similarly unavailing. Any call from a known drug supplier to an individual arrested with drugs and a gun, more than establishes probable cause to believe that the phone is being used in furtherance of drug trafficking and is likely to contain evidence. Nor does the defendant allege, or provide any basis to assert, that the inadvertent error concerning the number of calls was knowingly false. As such, there is nothing to foreclose the application of the good faith exception.

> ### C. The Search Warrant Was Not Overbroad and Did Not Lack Particularity

> #### 1. Applicable Law

A warrant is overbroad if items authorized to be seized by the search warrant were not supported by probable cause, while a warrant is insufficiently particularized if the warrant, on its face, fails to provide the necessary guidelines for the search by the executing officers. United States v. Hernandez, No. 09 Cr. 625 (HB), 2010 WL 26544, at * 7 (S.D.N.Y. Jan. 6, 2010); see United States v. Levy, No. S5 11 Cr. 62 (PAC), 2013 WL 664712, at *5 (S.D.N.Y. Feb. 25, 2013); United States v. Villar, No. S3 05 Cr. 621 (KMK), 2007 WL 1075041 (S.D.N.Y. April 24, 2007).

With respect to overbreadth, the question is whether the magistrate judge authorized "the seizure of specific items for which there is no probable cause." Hernandez, 2010 WL 26544 at *8. As always, a finding of probable cause requires a practical or fair probability. As is true with other challenges to whether a warrant is supported by probable cause, the magistrate judge's finding that probable cause exists is entitled to great deference and the task of the reviewing court "is simply to determine that the magistrate judge had a substantial basis for that determination," Hernandez, 2010 WL 26544 at *8 (quoting Gates, 462 U.S. at 239)

(quotation marks omitted), and any doubts should therefore be resolved in favor of upholding the warrant.  Id.

While overbreadth addresses the requirement that the scope of the warrant be supported by the probable cause on which the warrant is based, "particularity is the requirement that the warrant must clearly state what is sought." Levy, 2013 WL 664712 at * 5 (quoting United States v. Cioffi, 668 F.Supp.2d 385, 390 (E.D.N.Y. 2009).  The Fourth Amendment "specifies only two matters that must be particularly described in the warrant: [1] the place to be searched and [2] the persons or things to be seized." United States v. Grubbs, 547 U.S. 90, 97 (2006) (internal quotation marks omitted).  With respect to the "things" to be seized, "[a] warrant must be sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize." United States v. Shi Yan Liu, 239 F.3d 138, 140 (2d. Cir 2000) (internal citations and quotation marks omitted).  In determining whether a search warrant is sufficiently particular, the Court should only consider the warrant itself and any attachments or documents incorporated by reference in the warrant.  See Groh v. Ramirez, 540 U.S. 551, 557 (2004).

## 2.    Discussion

The search warrant issued by Judge Netburn was not overbroad and included the required particularity.  The search warrant for the Cellphone was limited to a search for evidence of particular crimes, specifically pertaining to "narcotics trafficking and conspiracy to commit the same, in violation of Title 21, United States Code, Sections 841 and 846, and possession of a firearm in furtherance of drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)."  In light of this limitation in the search warrant, it was neither overbroad nor insufficiently particularized.

19

The defendant's claims of overbreadth and lack of particularity fall flat.  First, the defendant claims that the warrant was overbroad because it should have had a date limitation, while acknowledging that the majority of the files were from within a few months of when Leyva was arrested.  The lack of a date restriction does not make a search warrant overbroad. There was probable cause to believe the defendant was involved in narcotics trafficking, which is a continuing offense, and there was a fair probability that files on the phone even older than a few months before the arrest might have contained evidence of narcotics trafficking.  Further, there was probable cause to search for evidence that the defendant was the user of the phone, which might be contained in data without any time limitation.

Second, the defendant claims the warrant was not sufficiently particularized because it failed to explain how to target the relevant files and, in executing the warrant, the officers made a copy of the full contents of the cell phone.  As an initial matter, the warrant limited the agents to search the contents for files only for evidence related to certain specified offenses, namely narcotics and firearms offenses.  See United States v. Corleto, No. 2:08-cr-585(TS) 2009 WL 274488, at *12-13 (D. Utah Feb. 5, 2009) (limitation in warrant for the search of computer and cell phone to information evidence related to child pornography was sufficiently particularized and did not authorize a broad, unchanneled search through the defendant's document files as a whole.)  Thus, while the warrant did permit the agents to review videos and images on the phone, they were permitted to review them solely to search for evidence related to the specified offenses, including potential co-conspirators—evidence for which probable cause was specifically articulated in the Affidavit.[9]  While the agents did need to obtain an image of

---

[9] Although, the defendant complains that some of the images and video files that were extracted included apparently personal items, a review of such items was necessary to ascertain whether they constituted evidence of illegal activities. For instance, one video on the Cellphone starts

the entire contents of the phone in order to conduct their review, this was necessary appropriate in these circumstances.  Cell phones, particularly smart phones, like the iPhone here, commonly contain large amounts of information that it is often impractical for law enforcement to review all of the information on the device.  Indeed, as Federal Rule of Criminal Procedure 41(e)(2) recognizes, electronic storage media, such as the Cellphone, contain large amounts of information that will frequently require the copying of the storage medium for later review to determine what information falls within the scope of the warrant.  Moreover, here, the Cellphone was passcode protected, and retrieval of the contents of the phone was not just authorized by the warrant but also because the Government needed to obtain the assistance of Apple to unlock the device and extract the contents of the phone for the agents so they could conduct their review. These procedures, which were specifically authorized by the court, did not transform the warrant into a general warrant as the defendant asserts.

## Conclusion

For the foregoing reasons, the Government respectfully requests that the Court deny the defendant's motion to suppress without a hearing.


Dated: New York, New York
       June 19, 2015

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

                    By:  _____/s/_____
                              Eli J. Mark/Rebecca Mermelstein
                              Assistant United States Attorneys
                              (212) 637-2431/2360

with images of shoes and then pans to a firearm.  While a cursory review might have viewed this video as innocuous, a full review reveals that it constitutes evidence of a crime.