UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA                    15 CR 201 (LTS)

-against-

JORGE LEYVA
-------------------------------------------------------x


**REPLY MEMORANDUM IN SUPPORT OF
JORGE LEYVA'S PRETRIAL MOTIONS**

Deborah Colson
Kristen Santillo
Colson & Harris LLP
80 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 257-6455

# Table of Contents

Table of Authorities .................................................................................................................................iii

Preliminary Statement.............................................................................................................................. 1

Argument .................................................................................................................................................. 1

   A.   Mr. Leyva is Entitled to an Evidentiary Hearing on his Motion to Suppress Physical Evidence ..... 1

   B.   The Government has Failed to Establish that Mr. Leyva Posed a Physical Threat or that Handcuffing Him was Necessary to Protect the Officers ................................................................. 4

   C.   The Government has Not Established by a Preponderance of the Evidence that the Evidence Would Have Been Inevitably Discovered ......................................................................................... 7

   D.   Mr. Leyva is Entitled to a Hearing on his Motion to Suppress Statements ...................................... 8

   E.   The Warrant to Search Mr. Leyva's Phone was not Supported by Probable Cause....................... 10

   F.   The Good Faith Exception Does Not Apply and a Franks Hearing is Necessary ........................... 12

   G.   The Warrant Was Overly Broad and Insufficiently Particular, and its Execution Constituted a General, Exploratory Rummaging.................................................................................................... 13

Conclusion .............................................................................................................................................. 15

# Table of Authorities

## Cases

*Arizona v. Johnson*, 555 U.S. 323 (2009) ....................................................................................... 8

*Colorado v. Connelly,* 479 U.S. 157 (1986) .................................................................................... 8

*Coolidge v. New Hampshire,* 403 U.S. 443 (1971) ....................................................................... 14

*Franks v. Delaware,* 438 U.S. 154 (1978) ..................................................................................... 12

*Illinois v. Wardlow,* 528 U.S. 119 (Stevens, J., concurring) .......................................................... 3

*Nix v. Williams,* 467 U.S. 431 (1984) ............................................................................................. 7

*Oliveira v. Mayer,* 23 F.3d 642 (2d Cir. 1994) ............................................................................... 7

*Rhode Island v. Innis,* 446 U.S. 291 (1980) .................................................................................... 8

*Terry v. Ohio*, 392 U.S. 1 (1968) .................................................................................................... 2

*Turner v. United States,* 396 U.S. 398 (1970) ........................................................................ 11, 14

*United States v. Bailey,* 743 F.3d 322 (2d Cir. 2014) .................................................................. 4, 8

*United States v. Barret*, 824 F.Supp.2d 419 (E.D.N.Y. 2011) ...................................................... 10

*United States v. Coreas*, 419 F.3d 151 (2d Cir. 2005) .................................................................... 4

*United States v. Cortez*, No. 95 CR. 275 (RPP), 1995 WL 422029 (S.D.N.Y. July 18, 1995) ...................... 9

*United States v. Dykes,* 406 F.3d 717 (D.C. Cir. 2005) ................................................................. 6

*United States v. Elston,* 479 F.3d 314 (4th Cir. 2007) ................................................................. 5

*United States v. Eng,* 971 F.2d 854 (2d Cir. 1992) ......................................................................... 7

*United States v. Esieke*, 940 F.2d 29 (2d Cir. 1991) ...................................................................... 6

*United States v. Hamlin*, 319 F.3d 666 (4th Cir. 2003) ................................................................. 5

*United States v. Heath,* 455 F.3d 52 (2d Cir. 2006) ........................................................................ 8

*United States v. Laing,* 889 F.2d 281 (D.C. Cir. 1989) ................................................................... 6

*United States v. Maher*, 145 F.3d 907 (7th Cir. 1998) .................................................................. 5

*United States v. Martinez*, 462 F.3d 903 (8th Cir. 2006) .............................................................. 5

*United States v. Mason*, No. S1 06CR.80 (NRB), 2007 WL 541653 (S.D.N.Y. Feb. 16, 2007) ............... 10

*United States v.* Mathurin**,** 148 F.3d 68 (2d Cir.1998) .............................................................. 9

*United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012) ................................................... 14

*United States v. Newton*, 369 F.3d 659 (2d Cir. 2004) .............................................................. 5, 8

*United States v. Pena*, 961 F.2d 333 (2d Cir. 1992) ...................................................................... 4

*United States v. Romain*, No. Cr. 724, 2014 WL 6765831 (Dec. 1, 2014 S.D.N.Y) ................................ 10

*United States v. Sanders*, 994 F.2d 200 (5th Cir. 1993) ................................................................ 6

*United States v. Shamsideen*, No. 03 CR 1313(SCR), 2004 WL 1179305 (S.D.N.Y. Mar. 31, 2004) ......... 4

*United States v. Stokes*, 733 F.3d 438 (2d Cir. 2013) ..................................................................... 7

*United States v. Vargas*, 369 F.3d 98 (2d Cir. 2004) ...................................................................... 5

*United States v. Wilson*, 2 F.3d 226 (7th Cir. 1993) ................................................................... 6

*United States v. Zemlyansky*, 945 F. Supp. 2d 438 (S.D.N.Y. 2013) ........................................... 14

## Statutes

U.S.S.G. § 2.D.1.1(c)(11) ................................................................................................................ 13

U.S.S.G. § 2.D.1.1(c)(14) ................................................................................................................ 13

# I.

## Preliminary Statement

Mr. Leyva respectfully submits this reply memorandum in response to the government's opposition to his motion to suppress statements and physical evidence.  The government has failed to meet its burden of establishing there was a reasonable basis to handcuff Mr. Leyva, that he knowingly and voluntarily waived his *Miranda* rights, or that the warrant to search his phone was based on probable cause.  The Court should decide the motion in Mr. Leyva's favor or grant an evidentiary hearing to explore whether there is a sufficient factual basis for the government's allegations.

# II.

## Argument

### A.  Mr. Leyva is Entitled to an Evidentiary Hearing on his Motion to Suppress Physical Evidence

In objecting to an evidentiary hearing, the government contends there are no disputed issues of material fact surrounding the circumstances of Mr. Leyva's arrest because the defense has accepted the allegations in the Complaint as true.  Gov. Opp'n  9.   The government's articulation of the defense position is overly simplistic.   In our opening brief, we argued that the allegations in the Complaint, *even if true*, did not provide the officers with reasonable suspicion to believe that Mr. Leyva was armed and dangerous.  Def. Br. 6.  We made this argument in part because the Complaint contains a barebones and subjective description of the events leading to his arrest.  It fails to identify the particular crime—if any—the officers reasonably suspected Mr. Leyva of committing, why they believed the area was a high-crime neighborhood, how long they observed Mr. Leyva, the address of the building he entered, why his visit there was significant, how long he remained, and what else, if anything, drew the officers' attention.  Ex. A to Colson

Aff. ¶ 4.[1]  A *Terry* analysis turns on the details, asking "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).  An evidentiary hearing is thus necessary to ascertain what the officers actually observed and whether a reasonable officer standing in their shoes would have reached the same conclusions.

A hearing is also required to test the validity of two new allegations included for the first time in the government's opposition brief.  In its brief, the government claims that Mr. Leyva remained in the apartment building "only a short time."  Gov. Opp'n at 10.  The Complaint, however, simply alleges that Mr. Leyva "enter[ed]" and "later" exited a building; it does not state how long he remained inside.  Ex. A to Colson Aff. ¶¶ 4(b)-(c).  Moreover, none of the reports provided on discovery even mention the address of the building, let alone the length of Mr. Leyva's visit.  Nor have any of the arresting officers provided an affidavit describing what they observed.  In stating that Mr. Leyva only remained inside the building a "short time," the government obviously seeks to raise the inference that he bought or sold drugs there.  Thus far, however, there is no actual evidence to support this claim.

The second factor the government mentions for the first time in its opposition brief is the ambush and murder of two police officers in Brooklyn shortly prior to Mr. Leyva's arrest.  Gov. Opp'n 2 n.2, 10.  The government relies on the murder to justify the officers' alleged perception of Mr. Leyva as a threat.  *Id*. at 10.  But the prosecutors' focus on the murder does not constitute proof it was a significant factor for the officers.  There is no reference to the murder in the discovery, and none of the officers have submitted an affidavit stating the murder was their concern.

---

[1] References to the "Colson Aff." refer to the Affidavit of Deborah Colson dated June 2, 2015 submitted in connection with Mr. Leyva's opening brief.

Moreover, there are stark factual differences between the murder and the circumstances surrounding Mr. Leyva's arrest. The officers who were killed were in uniform in a marked police vehicle. *See* Benjamin Mueller and Al Baker, 2 N.Y.P.D. Officers Killed in Brooklyn Ambush; Suspect Commits Suicide, N.Y. TIMES, Dec. 20, 2014, *available at* http://www.nytimes.com/2014/12/21/nyregion/two-police-officers-shot-in-their-patrol-car-in-brooklyn.html. The arresting officers in this case were in an unmarked car, and nothing in the Complaint suggests a layperson would have known the car belonged to the police. Ex. A to Colson Aff. ¶ 4(a). In addition, there is no evidence that Mr. Leyva ambushed the officers or otherwise posed a danger. The Complaint states only that he "jaywalk[ed] across University Avenue and head[ed] directly towards the [unmarked] Vehicle." *Id*. at ¶ 4(c). Further, there were three officers in the car, and they had been observing Mr. Leyva for some time, including as he approached. *Id*. at ¶¶ 4(b); 4(c). When they identified themselves as law enforcement, Mr. Leyva allegedly ran from them; he did not attack them. *Id*. at ¶ 4(d). Recent events, including the chokehold death of Eric Garner and the shooting of Michael Brown should have put the officers on notice that innocent people may believe "that contact with the police can itself be dangerous….For such a person, unprovoked flight is neither 'aberrant' nor 'abnormal.'" *Illinois v. Wardlow,* 528 U.S. 119, 132-33 (Stevens, J., concurring). Thus, even if the officers felt a subjective fear—and the Complaint is devoid of any indication they did—further factual development is necessary to determine whether a reasonable officer in their position also would have perceived a threat, such that their response to Mr. Leyva was proportionate.

In short, given the sparse and conclusory allegations in the Complaint, and the government's insertion of additional, unsupported allegations in its opposition papers, a hearing is required to fully develop the facts available to the officers at the moment of arrest. *See United*

*States v. Pena*, 961 F.2d 333, 340 (2d Cir. 1992) (reversing district court's denial of suppression motion and remanding for an evidentiary hearing to allow the "conclusory sentence in the government's complaint" about the reliability of an informant to be "adequately tested.")  Mr. Leyva's failure to contest the government's allegations in an affidavit does not negate the need for a hearing.  The burden is on the government to establish a legal basis for the officers' conduct.  Mr. Leyva is not in a position to know what facts were available to them before they handcuffed and arrested him, including why they deemed the neighborhood to have "high gang and drug activity," *see* Ex. A to Colson Aff. ¶ 4(a), how long they observed him, and what, if any, articulable reasons they had for believing he had a weapon or posed a threat.  In *United States v. Shamsideen*, No. 03 CR 1313(SCR), 2004 WL 1179305, at *10 (S.D.N.Y. Mar. 31, 2004), where officers received their information from confidential informants, the district court exercised its discretion to grant an evidentiary hearing, even though the defendant's affidavit was general and conclusory and did not create a factual dispute.  The Court found that, "in this particular situation the Defendants do not have knowledge of the essential facts with which to create specific factual disputes." *Id.*  The Court should exercise the same discretion here.

   **B.  The Government has Failed to Establish that Mr. Leyva Posed a Physical Threat or that Handcuffing Him was Necessary to Protect the Officers**

In determining whether the use of handcuffs transforms an investigative stop into a *de facto* arrest, "[t]he relevant inquiry is whether police have a reasonable basis to think that the person detained poses a present physical threat and that handcuffing *is the least intrusive means to protect against that threat*."  *United States v. Bailey*, 743 F.3d 322, 340 (2d Cir. 2014) . (emphasis added).  The government does not even address whether handcuffing Mr. Leyva was the least intrusive means to protect against any perceived physical threats, much less offer a reasonable basis to believe that his flight could not have been prevented by other means.

Further, none of the cases cited by the government actually support the officers' use of handcuffs here.  In those cases, handcuffing was deemed appropriate because the officers had specific knowledge that a particular crime had been committed, and/or a reasonable and specific basis to believe the suspect was armed and dangerous.  In *United States v. Newton*, 369 F.3d 659, 663 (2d Cir. 2004), for instance, officers received a report that Newton, a parolee, "kept a gun in a shoe box by the door" of the home outside of which he was handcuffed, and had threatened to kill his mother and her husband.  Therefore, for safety reasons, it was deemed reasonable for the officers to handcuff Newton while they searched his home for the gun.  *Id*. at 675.  *See also United States v. Elston*, 479 F.3d 314, 315, 320 (4th Cir. 2007) (handcuffing within the bounds of a *Terry* stop when officers had received a phone call from a woman reporting that a drunk driver had just left her house, had recently been released from jail for assault, "had in his truck a loaded 9mm handgun, along with three clips of ammunition, and…had threatened to 'let [] them off in somebody.'"); *United States v. Martinez*, 462 F.3d 903, 907 (8th Cir. 2006) (handcuffing did not convert *Terry* stop into arrest when officer knew that a robbery had been committed by someone brandishing a gun, the defendant matched the description of the robber, he was found acting suspiciously near the crime scene and, after an initial pat-down during which handcuffs were not used, a wad of cash was found on his person.); *United States v. Vargas*, 369 F.3d 98, 102 (2d Cir. 2004) (officers "had reliable information that Vargas was carrying a weapon," and he fled when the officers approached him and continued to struggle once he was stopped.);  *United States v. Hamlin*, 319 F.3d 666, 669, 671-72 (4th Cir. 2003) (handcuffs reasonably necessary where the officer observed the defendant engage in an apparent drug transaction, he seemed nervous and repeatedly reached for his groin area, waist and pockets, and he resisted a pat-down.); *United States v. Maher*, 145 F.3d 907, 908-09 (7th Cir. 1998) (reasonable to handcuff suspect when the

officer had been dispatched to the scene because gunshots had been fired, and shortly thereafter he encountered the defendant, who seemed nervous, was clutching his front pants pocket, and ran when officer tried to pat him down.); *United States v. Wilson*, 2 F.3d 226, 227, 230-31 (7th Cir. 1993) (handcuffing appropriate where officers were pursuing suspect in a car matching defendant's, defendant jumped out of the moving car when approached by police, ran and did not stop even when officer drew a weapon and told him to freeze, and officer was alone in the middle of the night in a residential neighborhood when defendant was located beneath a porch.); *United States v. Sanders*, 994 F.2d 200, 201-02, 207-08 (5th Cir. 1993) (handcuffing reasonable when officer responded to complaint that an individual matching defendant's description had a gun, the defendant was found near where the complaint had been made, and he refused to follow the officer's command, at gunpoint, to lay down.); *United States v. Esieke*, 940 F.2d 29, 35-36 (2d Cir. 1991) (handcuffs and leg irons permissible in the context of a border detention of an alimentary canal smuggler, noting that "in contrast to a *Terry*-stop…a border detention need not be brief and minimally intrusive."); *United States v. Laing*, 889 F.2d 281, 283, 286 (D.C. Cir. 1989) (reasonable to force suspect to the ground where officers were executing a valid search warrant of an apartment they believed contained cocaine and automatic weapons, suspect was in the building lobby, shoved his hands in his pants when he saw the officers, ran toward the subject apartment, and would not stop when directed by officers.); *United States v. Dykes*, 406 F.3d 717, 720 (D.C. Cir. 2005) (handcuffing reasonable when officers reasonably believed defendant was armed, defendant was on the ground, had his hands underneath him near his waistband and would not move his hands into plain view when directed to do so by officers.)

Here, by contrast, the officers were on routine patrol and had not received any reports of criminal activity, gunshots being fired, or of someone carrying or brandishing a gun.  Ex. A. to

Colson Aff. ¶ 4(a).  As stated above, the government has not identified the particular crime—if any—the officers reasonably suspected Mr. Leyva of committing, nor offered a reasonable basis, based on the officers' own observations, to believe that Mr. Leyva was armed or otherwise dangerous.  Under these facts, handcuffing Mr. Leyva constituted an impermissible, *de facto* arrest.  *See Oliveira v. Mayer*, 23 F.3d 642, 646 (2d Cir. 1994) ("whenever this Court and other circuits have found an intrusive detention to be only a *Terry* stop, the police have always had a reasonable basis to believe the suspect was armed or otherwise dangerous.")

### C.  The Government has Not Established by a Preponderance of the Evidence that the Evidence Would Have Been Inevitably Discovered

Citing *United States v. Stokes*, 733 F.3d 438 (2d Cir. 2013), the government argues in a footnote that, even if handcuffing Mr. Leyva was illegal, the cocaine and gun inevitably would have been discovered during a protective frisk.  *See* Gov Opp'n 11 n.6.  But *Stokes* makes clear that, in order to invoke the inevitable discovery doctrine, the government must show that the evidence would have been obtained without a constitutional violation.  *Stokes*, 733 F.3d at 444.  Proof of inevitable discovery "involves no speculative elements but focuses on *demonstrated historical facts capable of ready verification or impeachment*."  *United States v. Eng*, 971 F.2d 854, 859 (2d Cir. 1992) (citing *Nix v. Williams*, 467 U.S. 431, 444 n.5 (1984)) (emphasis in *Eng*).  The district court must determine whether, "viewing affairs as they existed at the instant before the unlawful search occurred, what *would have happened* had the unlawful search never occurred." *Id.* at 861 (emphasis in original).  Thus, under the inevitable discovery doctrine, evidence is inadmissible unless a court "can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor."  *Stokes*, 733 F.3d at 444 (citing *United States v. Heath*, 455 F.3d 52, 60 (2d Cir. 2006).  In this case, the government's footnote offers no proof that a protective frisk was

lawful, much less that it would inevitably have resulted in recovery of the gun and drugs. *See*

*Bailey,* 743 F.3d at 332 (2d Cir. 2014) (noting that even when officers have reasonable suspicion

for a *Terry* stop, a pat-down is permissible only where there is also "a reasonable basis to think

'that the person stopped is armed and dangerous.'" ) (quoting *Arizona v. Johnson*, 555 U.S. 323,

326-27 (2009)).

### D.  Mr. Leyva is Entitled to a Hearing on his Motion to Suppress Statements

Mr. Leyva is also entitled to a hearing on whether he was properly advised of his

*Miranda* rights before making statements to police.

The government does not dispute that officers failed to Mirandize Mr. Leyva at the scene

of his arrest or that he was already in handcuffs when he supposedly admitted to having

marijuana. *See* Gov. Opp'n 11; *see also Newton*, 369 F.3d at 677 (noting that handcuffing

Newton placed him in custody for purposes of *Miranda*).  The government argues, however, that

Mr. Leyva's alleged statement regarding the marijuana is admissible because it was "voluntary

and not in response to any questioning."  Gov. Opp'n 13.

The government carries the burden of proving the voluntariness of a defendant's

statements by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

Here, the government's assertion of voluntariness has no evidentiary basis.  The Complaint does

not mention whether Mr. Leyva was questioned at the scene of the arrest, nor does it say whether

his statement was volunteered.  Under *Miranda*, the term "interrogation" "refers not only to

express questioning, but also to any words or actions on the part of the police (other than those

normally attendant to arrest and custody) that the police should know are reasonably likely to

elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  A hearing

will allow the Court to explore whether Mr. Leyva's statement was elicited by the officers through words or actions.

Mr. Leyva has also raised a sufficient factual issue to warrant a hearing on whether officers properly advised him of his *Miranda* rights at the station.  Mr. Leyva has submitted a declaration stating:  "I was arrested on January 6, 2015. I do not remember officers reading me my Miranda rights at any time."  Declaration of Jorge Leyva dated May 28, 2015.  The government has responded with the Declaration of Luis Martinez, which provides:  "After the defendant was arrested, at the police station, I informed the defendant of his <u>Miranda</u> rights. After being informed of his <u>Miranda</u> rights, he indicated he understood those rights, he agreed to speak with law enforcement, and he made a written statement."   Martinez Dec.  There are no documents to support Detective Martinez's claim.  Colson Aff. ¶ 13.  He apparently failed to make any written record that *Miranda* warnings were provided.  There is no written waiver form, nor does Mr. Leyva's written statement note that warnings were given.  In *United States v. Mathurin,* 148 F.3d 68, 69 (2d Cir.1998)**,** the Second Circuit expressly held that "[a]n assertion that *Miranda* warnings were not given, when the government asserts the contrary,…creates a specific factual dispute. That dispute cannot properly be resolved without an evidentiary hearing." Just such a dispute exists here.  Accordingly, a hearing is required.

The government cites authority for the proposition that an affidavit declaring a lack of memory does not suffice to raise a factual dispute warranting a hearing.  At the same time, however, it acknowledges competing precedent supporting the right to a hearing on these same facts.  *See* Gov. Opp'n 13 n.7; *United States v. Cortez*, No. 95 CR. 275 (RPP), 1995 WL 422029, at *2 (S.D.N.Y. July 18, 1995) (noting that defendant's "statement that she does not recall receiving [Miranda] warnings, since it is made on personal knowledge, constitutes the equivalent

of a denial," and ordering a hearing to resolve the dispute with officers.); *United States v. Mason*, No. S1 06CR.80 (NRB), 2007 WL 541653, at *3 (S.D.N.Y. Feb. 16, 2007) (ordering suppression hearing when defendant signed sworn declaration stating that he had "no recollection of being advised of [his] *Miranda* rights" nor "any recollection of waiving their protections.")  Here, given the genuine dispute between the parties, the Court should leave semantics aside and hold an evidentiary hearing to determine whether *Miranda* warnings were actually provided.

### E.  The Warrant to Search Mr. Leyva's Phone was not Supported by Probable Cause

The government contends that Mr. Leyva's possession of cocaine and a gun alone support a finding of probable cause to search his phone.  Gov. Opp'n 17.  In support of its argument, however, the government cites two readily distinguishable cases.  The warrant application in *United States v. Romain*, No. Cr. 724, 2014 WL 6765831, *1 (Dec. 1, 2014 S.D.N.Y) incorporated a criminal complaint based on an investigation that lasted for over a year, and stated that, "[a]ccording to multiple human sources of information and phone records, the Defendant used multiple cellular phones in order to carry on the drug-related scheme, including setting up narcotics-related meetings and wire payments.  The communications included oral conversations and text messages with several identified numbers used by Romain."  *Id*. at *1-2.

In *United States v. Barret*, 824 F.Supp.2d 419, 448 (E.D.N.Y. 2011), the search warrant affidavit detailed a year-long investigation into the defendant's drug trafficking activity.  It further explained that the defendant attempted to flee when the officers arrived to arrest him and that the arresting officers noticed boxes of large quantities of marijuana and a loaded firearm in plain view.  *Id*.  Those facts, coupled with the officer's experience that drug traffickers used cellphones for their trafficking activity, sufficed to establish probable cause.  *Id*. at 49.

Here, the officers did not conduct a year-long investigation into Mr. Leyva's drug-trafficking activity.  Rather, they had a single, brief encounter with Mr. Leyva where they recovered 14 grams of cocaine, small enough to fit into the front waistband of his pants.  *See* Ex. A to Colson Aff. ¶ 4(f).  Contrary to the government's representation, this does not constitute a "distribution-level quantity of narcotics."  *See* Gov. Opp'n  16.  *See also Turner v. United States*, 396 U.S. 398, 422-23 (1970) ("Would the jury automatically and unequivocally know that Turner was distributing cocaine simply from the fact that he had 14.68 grams of a cocaine and sugar mixture? … [H]aving a small quantity of a cocaine and sugar mixture is itself consistent with Turner's possessing the cocaine not for sale but exclusively for his personal use.")  Mr. Leyva's possession of a small handgun for protection, in what the government describes as a high-crime area, also does not compel the conclusion that Mr. Leyva was a drug trafficker.

As set forth in our opening brief, the government's remaining evidence is tenuous and misleading.  Mr. Leyva's request that his friends retrieve his phone and other property is perfectly understandable given the prospect of indefinite incarceration.  And, as the government now acknowledges, following his arrest, Mr. Leyva only received one call from an individual named "Black," not multiple calls as the warrant application expressly stated.  Gov. Opp'n  18. The government dismisses the distinction between one and multiple calls by arguing that "[a]ny call from a known drug supplier to an individual arrested with drugs and a gun, more than establishes probable cause to believe that the phone is being used in furtherance of drug trafficking and is likely to contain evidence."  *Id.*  This argument fails, however, because prosecutors do not even attempt to establish a connection between the caller named "Black" and the "Black" who sold drugs to the confidential informant.

Without additional evidence to believe Mr. Leyva was engaged in drug trafficking, the officer's general observation that drug traffickers use cell phones is insufficient to meet the probable cause standard.

### F.   The Good Faith Exception Does Not Apply and a Franks Hearing is Necessary

Assuming *arguendo* the Court finds the warrant lacked probable cause, the government contends the good faith exception to the exclusionary rule should apply. *Id*. This is incorrect. The good faith exception is inapplicable where, as here, a warrant application contains material misstatements demonstrating a deliberate or reckless disregard for the truth. *See Franks v. Delaware*, 438 U.S. 154, 156 (1978) (where an affiant deliberately or recklessly disregards the truth in a warrant application, and where the application's "remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.")

To obtain a *Franks* hearing, Mr. Leyva must demonstrate "(1) that the inaccuracies were the product of a Government agent's 'deliberate falsehood' or 'reckless disregard for the truth' rather than innocent mistake, and (2) that, after setting aside the falsehoods, what remains of the warrant affidavit is insufficient to support a finding of probable cause." *United States v. Coreas*, 419 F.3d 151, 155 (2d Cir. 2005). Both criteria are met here. The search warrant application contains at least two material errors. First, it states that "[b]ased on my review of a Substance Analysis Report prepared by the NYPD laboratory, I know that the substance contained in the Bag was approximately 15 grams of crack cocaine." Ex. C to Colson Aff. ¶ 8. The government has admitted this statement was false. The lab report describes the substance as cocaine, not crack cocaine, and prosecutors now report that further testing is required to determine if it is actually crack. See Gov. Opp'n 2 n.2. The detective's misrepresentation was not a typo. The Complaint and Indictment also refer to the substance as crack cocaine. Ex. A to Colson Aff. ¶ 6;

12

Ex. D to Colson Aff. ¶ 1.  The implications of this error for Mr. Leyva are severe.  If Mr. Leyva

actually possessed 15 grams of crack cocaine, his base offense level would be six points higher

under the Sentencing Guidelines.  *Compare* U.S.S.G. § 2.D.1.1(c)(11), *with* U.S.S.G. §

2.D.1.1(c)(14).  At a minimum, the detective's misstatement evidences a "reckless disregard for

the truth."

Second, as we explain above, the application erroneously stated that Mr. Leyva received

"numerous" calls from Black following his arrest when the truth is he received just one.  *See* Ex.

C to Colson Aff. ¶ 7  ("I believe that LEYVA's possession of crack cocaine coupled with his

receipt of numerous phone calls from Black and his eagerness to have his Associates take

possession of the TARGET CELLPHONE suggests that LEYVA uses the TARGET

CELLPHONE to communicate with other drug traffickers.")  (emphasis added).  *See* Ex. C to

Colson Aff. ¶ 5 (g) ("While LEYVA was being processed at the police station, the TARGET

CELLPHONE received multiple calls.  Detective-2 observed the TARGET CELLPHONE as it

was ringing and saw that the external screen displayed the name of the caller as 'Black.'")   The

detective's repeated reference to Black's "multiple" calls and his emphasis on their materiality

also displays a reckless disregard for the truth.

Since what remains of the affidavit is insufficient to support a finding of probable cause,

Mr. Leyva is entitled to an evidentiary hearing on his suppression motion.

### G.  The Warrant Was Overly Broad and Insufficiently Particular, and its Execution Constituted a General, Exploratory Rummaging

The government attempts to justify the breadth of its warrant by arguing that "narcotics

trafficking is a continuing offense."  Gov. Opp'n 20.   This argument fails on the facts.

Prosecutors do not have any evidence to suggest that Mr. Leyva was engaged in a continuing

narcotics offense, let alone that he was trafficking on the day of his arrest.  He was caught on one

occasion with less than 15 grams of cocaine, an amount the Supreme Court has described as indicative of personal use.  *See Turner*, 396 U.S. at 423 (finding that 14.68 grams of a cocaine and sugar mixture was a "small quantity," and was "consistent with Turner's possessing the cocaine not for sale but exclusively for his personal use.")  Accordingly, the failure to impose a date limitation on the search of Mr. Leyva's phone was inappropriate, and the warrant was overbroad.  *See, e.g.*, *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 460 (S.D.N.Y. 2013) (noting that absence of a time limitation reinforced the court's conclusion that the warrant functioned as a general warrant.)

In support of its particularity argument, the government notes that the warrant limited the search to evidence of specific crimes. At the same time, however, the government contends it was entitled to conduct an unlimited search through *all* of Mr. Leyva's files to uncover hidden evidence of criminal activity.  As the Court is well aware, the government could have set up a firewall and enlisted non-prosecuting attorneys to conduct the search of Mr. Leyva's phone so that the prosecuting attorneys were not privy to his personal information.  No firewall existed here, however, rendering this a "general, exploratory rummaging" that is inconsistent with the Fourth Amendment.  *See Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971) (Fourth Amendment's objective is to prevent the "general, exploratory rummaging in a person's belongings"); *United States v. Metter*, 860 F. Supp. 2d 205, 212 (E.D.N.Y. 2012) ("the manner in which the government executes the warrant must comport with the Fourth Amendment's reasonableness standard.")

14

### III.

### Conclusion

For the above reasons and those set forth in our moving papers, the Court should grant

Mr. Leyva's pretrial motions in their entirety.


Dated:         New York, N.Y.
               June 30, 2015                              /s/
                                             _____
                                             Deborah Colson
                                             Kristen Santillo